IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:20-cv-00658-CNS

GLENWOOD SPRINGS CITIZENS' ALLIANCE,

      Plaintiff,

and

GARFIELD COUNTY BOARD OF COUNTY COMMISSIONERS,

      Plaintiff-Intervenor,

v.

UNITED STATES DEPARTMENT OF THE INTERIOR,
DEBORAH HAALAND, Secretary of the Interior,
UNITED STATE BUREAU OF LAND MANAGEMENT,
NADA CULVER, Acting Deputy Director of the BLM,
JAMIE CONNELL, Colorado BLM State Director, and
LARRY SANDOVAL, JR., Field Manager of the BLM's Colorado River Valley Field Office,

      Defendants.

---

## ORDER

---

Garfield County covers the cities of Glenwood Springs and Rifle; the towns of Carbondale, Parachute, Newcastle, and Silt; and the community of Battlement Mesa (ECF No. 19 at ¶ 4). The Garfield County Board of County Commissioners is the sole legislative authority for Garfield County (*Id.*) Members of Plaintiff Glenwood Springs Citizens' Alliance, a non-profit organization, live near Glenwood Springs, and make daily use of the nearby roads for transportation and recreational purposes (ECF No. 1 at 5-6 ¶ 13). This civil action concerns a mining quarry

1

maintained outside Glenwood Springs by non-party Rocky Mountain Resources, and Rocky Mountain Resources' alleged use of the mining quarry to mine "common variety minerals" (ECF No. 1 at 1-2 ¶ 1). According to Plaintiffs, mining these minerals has—and continues to—harm the surrounding area (*see, e.g, id.* at 6 ¶ 14). Glenwood Springs and Garfield County allege that the Bureau of Land Management has enabled Rocky Mountain Resources' mining practices for years, contravening the Bureau's regulatory obligations (*See, e.g.*, ECF No. 19 at 6 ¶ 12).

Before the Court is the Federal Defendants' Motion to Dismiss Plaintiff Glenwood Springs Citizens' Alliance's ("Glenwood Springs'") Complaint and Plaintiff-Intervenor Garfield County Board of County Commissioners' ("Garfield County's") Complaint-in-Intervention (ECF No. 30).[1] The Federal Defendants contend that the Court should dismiss Glenwood Springs' and Garfield County's claims against them for lack of subject matter jurisdiction and for the failure to state a claim under the Administrative Procedure Act (*Id.* at 1-2). For the reasons set forth below, the Court GRANTS in part and DENIES in part the Federal Defendants' Motion to Dismiss.

## I. BACKGROUND[2]

The Bureau of Land Management (the "Bureau") first approved Mid-Continent Resources Minerals, Inc. and associated Pitkin Iron, Inc's Plan of Operations in 1982 (the "1982 Plan") (ECF No. 1 at 17 ¶ 56).[3] The companies conducted mining operations at the quarry, known as the Mid-Continent Quarry (the "Quarry"), located on federal public lands outside of Glenwood Springs,

---

[1] Pursuant to a prior minute order and status conference, the Federal Defendants refiled their previously filed Motion to Dismiss in August 2021. (*See* ECF No. 30 at 1-2.)

[2] The background facts are taken predominantly from the well-pleaded allegations in Glenwood Springs' Complaint. *See Porter v. Ford Motor Co.*, 917 F.3d 1246, 1248 n.1 (10th Cir. 2019). The allegations in the Complaint and Garfield County's Complaint-in-Intervention are substantially similar.

[3] The Bureau amended the Plan in 1989 (ECF No. 19 at 9 ¶ 18).

Colorado (*Id.* at 1-2, 17 ¶¶ 1, 56). The 1982 Plan was approved strictly for mining and removing "locatable" minerals, and did not authorize the removal of common variety limestone (*Id.* at ¶ 57). A mineral deposit is considered "common variety" if it is sold or used for common variety purposes, such as for "roadbase, rip-rap, backfill, and boulders" for construction projects (*Id.* at 12 ¶ 36). Mining companies require special permission from the Bureau to mine common variety minerals, and regulations governing the removal of common variety minerals differ from regulations governing the removal of other minerals (*See, e.g., id.* at 13 ¶¶ 40-43). CalX Minerals, Inc., Rocky Mountain's predecessor, acquired the Mid-Continent Quarry mining claims and resumed operations in early 2009 (*Id.* at 17 ¶ 58). The Bureau stressed to Rocky Mountain's predecessors that, pursuant to the 1982 Plan, mining for common variety uses was prohibited at the Quarry (*See id.* at ¶ 59; *see also id.* at 19-20 ¶ 66-68).

Time passed. Rocky Mountain purchased the mining claims covering the Quarry in 2016 (*Id.* at 17, 20 ¶¶ 57, 69). Like its predecessors, Rocky Mountain was informed that, pursuant to the 1982 Plan, mining minerals for common variety purposes at the Quarry was impermissible (*Id.* at 20-21 ¶ 71). Nonetheless, Glenwood Springs alleges that since Rocky Mountain purchased the Quarry's mining claims, the Bureau has allowed Rocky Mountain to excavate and sell limestone for common variety uses (*Id.* at 21 ¶ 73). But because the Bureau never gave Rocky Mountain formal permission to mine and sell minerals for common variety purposes through a Mineral Material Sales Contract, Rocky Mountain's mining operations have been in violation of relevant federal regulations (*See, e.g., id.* at 24 ¶ 84). After investigating Rocky Mountain's mining operations, Garfield County issued a violation notice against Rocky Mountain for violating its county permit in 2019 (*Id.* at 25 ¶ 86). Glenwood Springs alleges that sales record evidence further

demonstrates that Rocky Mountain violated both its county permit and the 1982 Plan by mining common variety minerals (*See, e.g., id.* at 27 ¶¶ 92-93).

In March and July 2019, the Bureau sent letters (the "March 2019 Letter" and the "July 2019 Letter") to Rocky Mountain permitting its continued operations (*Id.* at 31 ¶¶ 103-04). In 2019, Rocky Mountain and the Bureau entered into an escrow agreement (the "Escrow Agreement") (*Id.* at ¶ 104). Under the Agreement's terms, the Bureau permitted Rocky Mountain to continue its current operations subject to the parties establishing an escrow account to cover the sale of Rocky Mountain's common variety minerals, if such sales were occurring (*Id.*). At the same time, the Bureau began investigating Rocky Mountain's common varieties operations in order to prepare a Determination of Common Variety Mineral Examination Report (the "DCV Investigation") regarding Rocky Mountain's operations (*Id.* at 31 ¶ 103). At bottom, during the DCV Investigation, the Bureau has permitted Rocky Mountain to continue its common variety mining operations, despite having actual knowledge that Rocky Mountain has for years improperly produced and sold minerals for common variety uses (*Id.*). The Bureau has never otherwise conducted a regulatory review of Rocky Mountain's mining operations, and permitted Rocky Mountain to continue its operations "unabated" (*See id.* at 33, 38-39 ¶¶ 113, 136).

## II. LEGAL STANDARD

The Federal Defendants move to dismiss the Complaint and Complaint-in-Intervention's claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (ECF No. 30 at 2). The Federal Defendants argue that to survive their motion to dismiss, Glenwood Springs and Garfield County must allege facts satisfying the APA's statutory standing requirements (*Id.*). The Court

applies both the Rule 12(b)(1) and 12(b)(6) standards in assessing Glenwood Springs' and Garfield County's claims.[4]

### A.  Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) governs dismissal challenges for lack of subject matter jurisdiction. Rule 12(b)(1) challenges assume two forms. First, the moving party may mount a "facial attack" that challenges the complaint's allegations as to the "existence of subject matter jurisdiction." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004). When a party mounts a facial attack, courts must accept a complaint's allegations as true. *See Holt*, 46 F.3d at 1002. Second, a party may "go beyond" the complaint's allegations by presenting evidence challenging the factual basis "upon which subject matter jurisdiction rests." *Id.* (citation omitted). Plaintiffs bear the burden of establishing subject matter jurisdiction because they are the parties asserting it. *See Port City Properties v. Union Pac. R. Co.*, 518 F.3d 1186, 1189 (10th Cir. 2008).

In the APA context, establishing statutory standing is required for a court to exercise jurisdiction over a party's APA claims. *See, e.g.*, *S. Utah Wilderness All. v. Sierra*, No. 2:07-CV-00199-CW, 2010 WL 4782976, at *2 (D. Utah Nov. 16, 2010), *aff'd and remanded sub nom. S. Utah Wilderness All. v. Palma*, 707 F.3d 1143 (10th Cir. 2013). The failure to do so compels

---

[4] District courts within the Tenth Circuit have applied both the Rule 12(b)(1) standard and the Rule 12(b)(6) standard in assessing similar APA claims. *See Slater Park Land & Livestock, LLC v. U.S. Army Corps of Engineers*, 423 F. Supp. 3d 1076, 1079 (D. Colo. 2019) ("[T]he presence of final agency action is not a jurisdictional issue." (citation omitted)); *but see Cnty. Commissioners of Cnty. of Sierra v. United States Dep't of the Interior*, No. CV 21-611 GBW/CG, 2022 WL 2754297, at *5 (D.N.M. July 14, 2022) ("[T]he finality of a challenged agency action is . . . jurisdictional in the Tenth Circuit." (citation omitted)). Although the Tenth Circuit has indicated but not explicitly held that the Rule 12(b)(1) standard applies rather than the Rule 12(b)(6) standard, *see Farrell-Cooper Mining Co. v. United States Dep't of Interior*, 864 F.3d 1105, 1109 (10th Cir. 2017), given that the Federal Defendants moved to dismiss under Rules 12(b)(1) and 12(b)(6)—and that District Courts are split on this issue—for completeness the Court analyzes the Complaint and Complaint-in-Intervention under both standards.

dismissal. *See, e.g.*, *id.* In ruling on a Rule 12(b)(1) motion to dismiss claims under the APA, a party must meet its burden of showing that jurisdiction is proper for each claim. *See State of Utah v. Babbitt*, 137 F.3d 1193, 1204 (10th Cir. 1998).

The Court construes the Federal Defendants' Motion to Dismiss as a facial attack on Glenwood Springs' Complaint and Garfield County's Complaint-in-Intervention. The Motion to Dismiss challenges Glenwood Springs' and Garfield County's allegations, and the Federal Defendants attached no exhibits to it (*See, e.g.,* ECF No. 30 at 5). *Cf. Shipley v. I.R.S.*, No. CIV.A. 042573JWL, 2005 WL 1334617, at *1 (D. Kan. June 6, 2005), *aff'd*, No. 05-3273, 2006 WL 497720 (10th Cir. Mar. 2, 2006) (construing motion to dismiss as "factual attack" where defendant "offer[ed] exhibits" in support of the motion). Accordingly, the Court accepts Glenwood Springs' and Garfield County's allegations as true in its analysis of the Federal Defendants' dismissal motion. *See Holt*, 46 F.3d at 1002.

### B. Federal Rule of Civil Procedure 12(b)(6)

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Allegations are read in "the context of the entire complaint." *Chilcoat v. San Juan Cnty.*, 41 F.4th 1196, 1207 (10th Cir. 2022) (quotation omitted). To survive a motion to dismiss, a complaint must allege facts, accepted as true and interpreted in the light most favorable to the plaintiff, to state a claim to relief that is plausible on its face. *See, e.g.*, *Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016). A plausible claim is one that allows the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then a plaintiff

has failed to "nudge [the] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quotation omitted). In assessing a claim's plausibility, "legal conclusions" contained in the complaint are not entitled to the assumption of truth. *See Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). The standard, however, remains a liberal pleading standard, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quotation omitted).

### III. ANALYSIS

Having considered the Federal Defendants' Motion to Dismiss (ECF No. 30), Glenwood Springs' Response (ECF No. 31), Garfield County's Response (ECF No. 32), the Federal Defendants' Reply (ECF No. 33), the Complaint (ECF No. 1), the Complaint-in-Intervention (ECF No. 19), relevant legal authority, and oral argument held on October 26, 2022, the Court grants in part and denies in part the Federal Defendants' Motion to Dismiss.

#### A. The Improper Authorization Claims

Glenwood Springs and Garfield County allege that the Bureau has violated its legal and regulatory obligations by improperly authorizing Rocky Mountain's mining operation for common variety minerals, and that for this reason the Bureau's actions are arbitrary and capricious subject to judicial review under the APA (ECF Nos. 1 at 41 ¶ 143, 19 at 19-20 ¶ 46). The Federal Defendants urge dismissal of Glenwood Springs' and Garfield County's improper authorization claim on the grounds that the Complaint and Complaint-in-Intervention fail to allege the Federal Defendants took any final agency action (*See* ECF No. 30 at 3). According to the Federal

Defendants, the alleged "agency actions" that support Glenwood Springs' and Garfield County's claim contemplate "pre-enforcement" activity—not actions that demonstrate any decision the Bureau has formally made regarding Rocky Mountain's mining operations (*Id.* at 6). At bottom, the Federal Defendants contend that without adequately alleging they took any final agency action, the Complaint and Complaint-in-Intervention fail to establish that Glenwood Springs and Garfield County have statutory standing to bring their improper authorization claim (*See id.* at 3). The Court agrees with the Federal Defendants.

To establish statutory standing under the APA for their improper authorization claim, Glenwood Springs and Garfield County must allege that the Federal Defendants took a "final agency action." *See Pennaco Energy, Inc. v. U.S. Dep't of Interior*, 377 F.3d 1147, 1155 (10th Cir. 2004); *see also* 5 U.S.C. § 551(13) (defining types of agency actions). An agency action is "final" if it meets two requirements. First, it must mark the "consummation of [an] agency's decisionmaking process." *Kansas ex rel. Schmidt v. Zinke*, 861 F.3d 1024, 1031 (10th Cir. 2017) (quotation omitted). Second, it must be an action that establishes "rights or obligations," or from which "legal consequences . . . flow." *Id.* (citation omitted). Agency decisions of a "merely tentative" or interlocutory nature are not final. *Pennaco Energy*, 377 F.3d at 1155.[5]

In support of their argument that the Bureau's allegedly improper authorization of Rocky Mountain's mining operations gives rise to a cognizable APA claim, Glenwood Springs and Garfield County identify three documents they contend constitute final agency actions subject to

---

[5] These two "prongs" were articulated in *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997). Courts have consistently interpreted—and applied—*Bennett* as a two-prong test. *See, e.g., Pennaco Energy*, 377 F.3d at 1155. The Federal Defendants invite the Court to apply a third: whether a final agency action had a "direct and immediate" impact. (ECF No. 30 at 3.) The Court declines the Federal Defendants' invitation. As Garfield County correctly argues, the authority on which they rely for this proposition predates *Bennett*, and the Court is bound to follow the *Bennet* framework and subsequent Tenth Circuit cases applying it (*See* ECF No. 32 at 12).

judicial review: the March 2019 Letter, the July 2019 Letter, and the Escrow Agreement (ECF Nos. 1 at 38 ¶ 134, 31 at 22, 32 at 9-10). Even assuming that these documents are agency actions, the Court agrees with the Federal Defendants they are not *final* agency actions.

To be "final" agency actions, the three documents must consummate the Bureau's decisionmaking process. *See Zinke*, 861 F.3d at 1031. Glenwood Springs argues that the Escrow Agreement allowed Rocky Mountain to continue mining common variety minerals, and that it represented the Bureau's "affirmative decision" to permit continued mining at the Quarry (ECF No. 31 at 34-35). Therefore, it argues, the Escrow Agreement is not merely a tentative or interlocutory decision—it is a document that authorized Rocky Mountain's continued mining of common variety minerals with "daily on-the-ground impacts" for local residents (*Id.* at 39). For these reasons, Glenwood Springs contends, the Escrow Agreement satisfies *Bennet*'s first "consummation" prong (*Id.* at 35-36). Garfield County makes similar arguments regarding both the Agreement and the March 2019 and July 2019 Letters. According to Garfield County, the documents unambiguously represent the consummation of the Bureau's decision to allow removals of suspected common variety limestone, further underscored by the extensive negotiations that prefaced the Escrow Agreement's execution (ECF No. 32 at 13-15).

The Court rejects Glenwood Springs' and Garfield County's interpretation of the Escrow Agreement, March 2019, and July 2019 Letters. Turning to the Escrow Agreement, it states that the Bureau "believes that" the minerals Rocky Mountain removed from the Quarry "may not be" subject to disposal under the Mining Law of 1872 (ECF No. 32-1 at 2).[6] It goes on to state that the

---

[6] Even construing the Federal Defendants' Motion to Dismiss as a facial attack under Rule 12(b)(1), the Court may consider the Escrow Agreement and other documents attached to or referenced in the Complaint and Complaint-in-Intervention. *See Am. Nat'l Prop. & Cas. Co. v. Whisenant,* No. CV 19-1024 KG/KK, 2020 WL 5366810, at *4 (D.N.M. Sept. 8, 2020) (determining that consideration of documents attached to or referenced in complaint generally

Bureau has "begun" a mineral investigation, and that "if" the Bureau concludes that minerals are not subject to the Mining law then the Bureau "may" initiate administrative contest proceedings (*Id.*). And when the Bureau's determination "has become" final, the Bureau "shall" notify Rocky Mountain (*Id.* at 3). The Escrow Agreement contains similar language elsewhere. For instance, "in the event" that the Bureau determines some Quarry minerals are not subject to the Mining Law and Rocky Mountain fails to follow the Agreement's prescribed escrow procedures, then Rocky Mountain "may be subject to liability" for damages (*Id.* at 4).

The Escrow Agreement's recitals bear no hallmarks of consummated agency decisionmaking. There is nothing to indicate that the Escrow Agreement was issued after "extensive agency factfinding" regarding Rocky Mountain's mining operations. *See U.S. Army Corps of Engineers v. Hawkes Co.*, 578 U.S. 590, 597 (2016). By its own terms, the Escrow Agreement states that the Bureau has undertaken, but not yet completed, its DCV Investigation (*See* ECF No. 32-1 at 2). The Bureau has not "ruled definitively" on whether Rocky Mountain is mining common variety minerals—the Escrow Agreement states only that it "believes" Rocky Mountain may be mining common variety minerals (*See id.*). *See also Hawkes*, 578 U.S. at 597 (quotation omitted). The Escrow Agreement more closely resembles a tentative assessment of Rocky Mountain's operations, and is not the "last word" on Rocky Mountain's mining operations. *Ctr. For Native Ecosystems v. Cables*, 509 F.3d 1310, 1330 (10th Cir. 2007). Furthermore, even if the Bureau's investigation determines that some Quarry minerals are not subject to the Mining Law, then "the [Bureau] *may* initiate" administrative proceedings, illustrating that the Bureau may

---

does not "convert a facial attack to a factual one" (quotation omitted)). The Court may also consider the documents under Rule 12(b)(6) as well. *See, e.g., N.E.L. v. Gildner*, 780 F. App'x 567, 571 (10th Cir. 2019).

choose not to pursue any violation it uncovers (ECF No. 32-1 at 2 (emphasis added)). *See also Slater Park*, 391 F. Supp. 2d at 1082 (determining notice of violation was not final because defendants "may also choose not" to further pursue violation). In sum, the Escrow Agreement only reflects the "first step in a potential enforcement process"—not the end of the Bureau's decisionmaking. *Id.* (quotation omitted). *See also Utah Native Plant Soc'y v. United States Forest Serv.*, 923 F.3d 860, 866 (10th Cir. 2019) (determining agency action was final where action resulted in the plaintiff's "first demand denied; end of discussion").

For substantially the same reasons, the Court concludes that the March 2019 and July 2019 Letters do not consummate the Bureau's final decisionmaking process. Garfield County contends that Letters, like the Escrow Agreement, evidence the Bureau's decision to allow Rocky Mountain's removal of "suspected" common variety limestone (ECF No. 32 at 13). But the March 2019 Letter notified Rocky Mountain that the Bureau intended to conduct a "Determination of Common Variety Mineral Examination," and the July 2019 Letter outlined "next steps" for baseline studies, the escrow account, and Determination of Common Variety Mineral Examination (ECF Nos. 32-9 at 1, 32-10 at 1-3). The content of the March 2019 and July 2019 Letters do not demonstrate that the Bureau had reached a definitive ruling on Rocky Mountain's mining operations or that the Bureau had, at that time, extensively investigated whether Rocky Mountain was mining minerals for common variety uses. *Cf. Hawkes*, 578 U.S. at 597; *Cables*, 509 F.3d at 1330. Accordingly, the March 2019 and July 2019 Letters do not satisfy *Bennett*'s first "consummation" prong.

* * *

The gravamen of Glenwood Springs' and Garfield County's argument is that the Bureau has taken a final agency action because the Escrow Agreement permits Rocky Mountain to continue its mining operations, which are likely in violation of the 1982 Plan (*See* ECF Nos. 31 at 38-39, 32 at 15). But alleging that the Escrow Agreement enables Rocky Mountain to continue its mining operations while the DCV Investigation is allegedly pending is insufficient to show the Agreement is a "consummation" of the Bureau's decisionmaking. *See Bennett*, 520 U.S. at 177–78. Simply because an agency action carries consequences—even if allegedly harmful—does not necessarily make that action final.

Glenwood Springs and Garfield County have failed to show the Escrow Agreement, March 2019 Letter, or July 2019 Letter are consummations of the Bureau's decisionmaking. As such, the Court need not address whether these documents are agency actions that have determined any rights or obligations, or are actions "from which legal consequences" flow. *Bennett*, 520 U.S. at 177–78. Accordingly, Glenwood Springs and Garfield County have not met their burden of satisfying the APA's statutory standing requirements as to their improper authorization claim, *see, e.g., Pennaco Energy*, 377 F.3d at 1155, and this claim is DISMISSED.[7]

### B.  The Failure to Act & Unreasonable Delay Claims

Turning to Glenwood Springs' and Garfield County's second claim under § 706(1) of the APA, the parties contend that the Bureau violated its statutory and regulatory obligations by failing to act when it knew Rocky Mountain was mining common variety minerals (*See* ECF Nos. 1 at

---

[7] For the same reasons, dismissal under Rule 12(b)(6) is appropriate because Glenwood Springs and Garfield County have failed to plead a plausible claim for relief. The March 2019 Letter, July 2019 Letter, and Escrow Agreement do not constitute final agency actions. Therefore, Glenwood Springs and Garfield County have not set forth a plausible APA claim based on the Bureau's alleged improper authorization of Rocky Mountain's mining operations. *See, e.g., Mayfield*, 826 F.3d at 1255; *Iqbal*, 556 U.S. at 678.

41-42 41-42 ¶ 145, 19 at 48). The plaintiffs further allege that the Bureau unreasonably delayed in applying the governing law and implementing regulations to Rocky Mountain's ongoing mining operations (*See id.*). As with their improper authorization claim, under Rule 12(b)(1) Glenwood Springs and Garfield County bear the burden of satisfying the APA's statutory standing requirements for their second claim based on the Bureau's "unlawfully withheld and unreasonably delayed" agency action (ECF Nos. 1 at 41-42 41-42 ¶ 145, 19 at 48). *See also Babbitt*, 137 F.3d at 1204. And under Rule 12(b)(6), Glenwood Springs and Garfield County must allege plausible claims based on the Bureau's "unlawfully withheld and unreasonably delayed" agency action. *See, e.g.*, *Mayfield*, 826 F.3d at 1255.

The Federal Defendants contend dismissal of Glenwood Springs' and Garfield County's claims is appropriate because the Bureau's decision to bring an enforcement action against Rocky Mountain is discretionary, and for this reason, its failure to do so does not violate the APA (*See* ECF No. 30 at 8). *See also* 5 U.S.C. § 706(1). As explained further below, the Court disagrees with the Federal Defendants that the Bureau's discretion to bring an enforcement action warrants dismissal of Glenwood Springs' and Garfield County's second claim.

    *1.  Unlawfully Withheld Agency Action*

Glenwood Springs and Garfield County allege the Bureau has unlawfully withheld agency action against Rocky Mountain's continued mining of alleged common variety minerals (*See* ECF Nos. 1 at 41-42 41-42 ¶ 145, 19 at 48). The Court first determines what requirements Glenwood Springs and Garfield must satisfy to survive the Federal Defendants' Motion to Dismiss their § 706(1) claims based on the Bureau's unlawfully withheld actions before discussing whether they have satisfied those requirements.

a.   *Legal Framework*

The APA authorizes suit by any person adversely affected by an agency's failure to take certain agency actions. *See Norton v. S. Utah Wilderness All*., 542 U.S. 55, 61–62 (2004) (citing 5 U.S.C. §§ 702 and 704). Relief for an agency's failure to act is provided in § 706(1): a reviewing court shall "compel agency action unlawfully withheld . . . ."

Agencies' failures to act are "sometimes remediable under the APA, but not always." *Norton*, 542 U.S. at 61. A claim for unlawfully withheld agency actions under § 706(1) may only proceed where a plaintiff asserts an agency failed "to take a *discrete* agency action" as defined in § 551(13) that "it is *required to take*." *Id.* at 64 (original emphasis); *see also Scarborough Citizens Protecting Res. v. U.S. Fish & Wildlife Serv*., 674 F.3d 97, 99–100 (1st Cir. 2012) ("We start by asking whether the . . . [statutory] provision . . . . imposes a discrete, non-discretionary duty to act on the federal official."). "The discreteness requirement promotes a core goal of the APA because it permits lawsuits targeting agency *in*action to the same degree that suits challenging reviewable 'agency action' under § 706(2) . . . are permitted." *Ctr. for Biological Diversity v. Zinke*, 260 F. Supp. 3d 11, 20 (D.D.C. 2017) (citations omitted) (original emphasis). So too with the "mandatory" requirement: it is consistent with the practice of limiting judicial review to acts agencies are demanded to take by law—including, "of course, agency regulations that have the force of law." *Norton*, 542 U.S. at 65. In the context of agency enforcement actions, there is a presumption against judicial review of an agency's "refusal to take enforcement steps" if the decision to enforce is discretionary. *Heckler v. Chaney*, 470 U.S. 821, 831 (1985).

With this framework in mind, the Court turns to the Federal Defendants' argument that Glenwood Springs and Garfield County have failed to allege the Bureau unlawfully withheld any agency action under § 706(1).

### b.  Discussion

According to the Federal Defendants, Glenwood Springs and Garfield County have not alleged facts satisfying their standing burden (*See* ECF No. 30 at 7). They have not met their burden, the Federal Defendants' argument goes, because the Bureau's decision to take any enforcement action against Rocky Mountain for its alleged mining of common variety minerals is discretionary (*Id.* at 8). To the extent Glenwood Springs' and Garfield County's second claims are premised on any allegedly withheld enforcement action against Rocky Mountain, the Court agrees with the Federal Defendants.

Glenwood Springs and Garfield County point to 43 C.F.R. § 3601.6 in arguing that the Bureau was under a "mandatory rule" to, among other actions, prohibit Rocky Mountain's operation for mining common variety minerals (ECF No. 31 at 46; *see also* ECF No. 32 at 18-19). But § 3601.6 outlines the Bureau's policy goals—it does not impose any discrete actions the Bureau is required to take. *See Norton*, 542 U.S. at 64. Glenwood Springs and Garfield County fail to identify any other authority that imposes on *the Bureau* a mandatory duty to initiate an enforcement action against Rocky Mountain for its mining operations. *Cf.* 43 C.F.R. § 3601.71 (explaining "unauthorized use" of public lands for companies' operations). Accordingly, to the extent Glenwood Springs and Garfield County argue the Bureau's alleged failure to prevent or

stop Rocky Mountain's continued mining of suspected common variety minerals, the parties have failed to meet their standing burden (*See* ECF Nos. 31 at 46, 32 at 21). *See also Heckler*, 470 U.S. at 831.[8]

But this does not end the Court's analysis of Glenwood Springs' and Garfield County's second claim. As pleaded, the parties also allege the Bureau unreasonably delayed agency action against Rocky Mountain for its suspected mining of common variety minerals (*See* ECF Nos. 1 at 41-42 41-42 ¶ 145, 19 at 48). Accordingly, the Court must proceed to analyze Glenwood Springs' and Garfield County's second claim under the APA's "unreasonably delayed" framework. *See* § 706(1).

### 2. *Unreasonably Delayed Agency Action*

Glenwood Springs and Garfield County claim that the Bureau unreasonably delayed taking any agency action against Rocky Mountain for mining common variety minerals (ECF Nos. 1 at 41-42 41-42 ¶ 145, 19 at 48). In support of their claim, they point to allegations that the Bureau knew—and had known for years—that Rocky Mountain was mining common variety minerals (*See, e.g.*, ECF Nos. 1 at 2-3 ¶ 3, 19 at 3-4 ¶ 5). The Court first determines what requirements Glenwood Springs and Garfield must satisfy to survive the Federal Defendants' Motion to Dismiss their § 706(1) claims based on the Bureau's unreasonably delayed actions before discussing whether they have satisfied those requirements.

---

[8] For substantially the same reasons, Glenwood Springs and Garfield County have failed to plead a plausible claim for relief based on the Bureau's allegedly "unlawfully withheld" agency action under Rule 12(b)(6). As required for such a claim, Glenwood Springs and Garfield County have not alleged that the Bureau was under a mandatory duty to initiate an enforcement action. *See* Fed. R. Civ. P 12(b)(6); *see also Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) (determining that while the 12(b)(6) standard does not require showing of prima facie case in complaint, elements of alleged cause of action help to determine "whether [the party] has set forth a plausible claim" (citation omitted)).

### a. Legal Framework

The APA authorizes courts to compel agency actions "unreasonably delayed." § 706(1). As with "unlawfully withheld" agency actions, delays cannot be "unreasonable with respect to an action that is not required." *Norton*, 542 U.S. at 64 n.1. "In considering a charge of unreasonable delay . . . . [a court] must satisfy [itself] that the agency has a duty to act and that it has 'unreasonably delayed' in discharging that duty." *In re Am. Rivers & Idaho Rivers United*, 372 F.3d 413, 418 (D.C. Cir. 2004) (citing § 706(1)). Therefore, a plaintiff who seeks to compel agency action "unreasonably delayed" under § 706(1) must "pinpoint an agency's failure to take an action that is *both* discrete *and* mandatory." *Center for Biological Diversity*, 260 F. Supp. 3d at 21 (citing *Norton*, 542 U.S. at 64); *see also Cnty. Commissioners of Cnty. of Sierra v. United States Dep't of the Interior*, No. CV 21-611 GBW/CG, 2022 WL 2754297, at *11 (D.N.M. July 14, 2022). In determining whether an agency's delay is unreasonable under the APA, the Court considers the five factors set out in *Qwest Commc'ns Int'l, Inc. v. F.C.C.*, 398 F.3d 1222, 1238–39 (10th Cir. 2005). These factors are the:

(1) extent of an agency's delay;

(2) Reasonableness of the delay in the context of legislation "authorizing agency action;"

(3) Consequences of the delay;

(4) Administrative difficulties bearing on the agency's "ability to resolve [the] issue;" and

(5) Complexity of the task "envisioned" by a court's remand order

*Id.* at 1239 (citation omitted). With these factors in mind, the Court proceeds in its analysis of Glenwood Springs' and Garfield County's § 706(1) claim for unreasonable delay.

b. *Discussion*

Glenwood Springs and Garfield County contend that the Bureau "[did] not have discretion to ignore the public interest" or otherwise disregard it statutory and regulatory obligations to "assess the proposed [mineral] removal's effects" on the public interest (ECF No. 32 at 19; *see also* ECF No. 31 at 43). They both further identify one regulatory obligation the Bureau has not yet discharged, given its knowledge that Rocky Mountain is mining "suspected" common variety minerals: its duty to conduct the "required determinations" under the common variety statutes and regulations regarding Rocky Mountain's mining operations; that is, to complete the DCV Investigation (ECF No. 32 at 19-20; *see also* ECF No. 31 at 45, 47). In sum, according to Glenwood Springs and Garfield County, the Bureau has made *no* determinations and engaged in *no* analysis regarding Rocky Mountain's removal of the suspected common variety minerals (*See* ECF Nos. 32 at 20, 31 at 47). In response to this argument, the Federal Defendants contend that Glenwood Springs and Garfield County do not seek to bring "any claim" to force the Federal Defendants to take any agency actions to allow Rocky Mountain's sale of common variety minerals (ECF No. 33 at 7-8). Nonsense.

First, Glenwood Springs and Garfield County clearly seek to enforce what they contend is the Bureau's regulatory obligation to make the "required determinations" that Rocky Mountain is mining common variety minerals (ECF No. 32 at 20). The allegations in the Complaint and Complaint-in-Intervention are clear:

> Given the nearly two years between constructive knowledge and submission of the expansion plan, further delay of the [Determination of Common Variety Mineral Investigation] is unreasonable, especially considering the decisions relating to the expansion plan will not be completed for at least another year or more.

(ECF No. 19 at 17-18 ¶ 42; *see also* ECF No. 1 at 31 ¶ 103). The Bureau has simply incorrectly read the Glenwood Springs' and Garfield County's briefs, Complaint, and Compliant-in-Intervention.

Second, the Federal Defendants concede in their Reply brief that at the time of its filing in October 2021, the Bureau had not yet determined whether Rocky Mountain was mining common variety minerals (ECF No. 22 at 6-7). The Reply states that the Bureau had not "determined that the mining operation [was] extracting common variety minerals," and that enforcement actions "depend[ed] on [the] completion of the pre-enforcement mineral examination" (*Id.* at 7). These statements are wholly consistent with the Bureau's statements at oral argument. When asked whether—approximately one year after the Reply brief was filed—there were any factual updates regarding the Bureau's DCV Investigation of Rocky Mountain's mining operations, the government's answer was straightforward: the DCV Investigation was ongoing, and the Bureau had reached no conclusions about Rocky Mountain's operations. And the Bureau had no particular timeline for determining whether Rocky Mountain was mining common variety minerals.

If the Federal Defendants' own statements were insufficient to reach the conclusion that the completion of its mineral investigation has been unreasonably delayed, *Qwest*'s application compels it. Of course, before applying the *Qwest* factors the Court must first determine, as a threshold matter, whether completion of the mineral investigation is a discrete and mandatory task. *Norton*, 542 U.S. at 64 n.1. As Glenwood Springs and Garfield County argue, it is (*See, e.g.*, ECF Nos. 32 at 20, 31 at 47).

***Discrete and Mandatory Agency Action.*** Glenwood Springs and Garfield County point to the escrow provision in 43 C.F.R. § 3809.101 as the Bureau's "justification" for its delay in

completing the mandatory DCV Investigation (*See* ECF Nos. 31 at 50, 32 at 20-21). The Bureau is not entitled to justify these delays, Garfield County's argument goes, because its duty to make mineral determinations is "mandatory" (ECF No. 32 at 21). Assuming that Rocky Mountain's pre-existing mining plan and operations were compliant with § 3809.101(a)'s description of "initiate[d] operations," § 3809.101 contemplates an affirmative obligation imposed on the Bureau. Indeed, under § 3809.101(a), the Bureau must "prepare[] a mineral examination report." In the context of mining suspected common variety minerals with an established escrow account, the regulation mandates that the Bureau will prepare a mineral examination: "Until the mineral examination report . . . *is prepared*, [the Bureau] will . . . approve a plan of operations for the disputed mining claim . . . ." § 3809.101(b) (emphasis added).

This regulatory language demonstrates that § 3809.101 establishes that completion of the Bureau's mineral examination for a specific mining operation is a discrete and mandatory action. *See Norton*, 542 U.S. at 64 (defining "failure to act" within the meaning of § 551(13) as failure to take action with "same characteristic of discreteness" shared by statute's preceding terms); *see also Am. Fin. Benefits Ctr. v. Fed. Trade Comm'n*, No. 17-04817, 2018 WL 3203391, at *6 (N.D. Cal. May 29, 2018) (concluding discreteness inquiry satisfied where agency's grant of authority included "investigating potential law violations"). Under the regulation, the Bureau must complete a mineral examination. *See* § 3809.101(a). This satisfies § 706(1)'s "mandatory" requirement, regardless of an investigation's outcome. *See Bennett*, 520 U.S. at 172 ("It is rudimentary administrative law that discretion as to the substance of the ultimate decision does not confer discretion to ignore the required procedures of decisionmaking." (citation omitted)). And although § 3809.101(a) does not state that the Bureau "shall" or "must" complete a mineral investigation

within a set timeframe, the Court may infer that completion of the investigation is mandatory based on the regulation's framework. *See Raymond Proffitt Found. v. U.S. E.P.A.*, 930 F. Supp. 1088, 1099 (E.D. Pa. 1996) (concluding that statutory framework "enable[d]" the court "to infer a reasonable time frame within which" an agency must act). Moreover, in July 2019 the Bureau represented that it "ha[d] already compressed the DCV schedule down to around one year" (ECF No. 31-11 at 4). Reading § 3809.101(a) to impose a mandatory obligation on the Bureau is wholly consistent with the remainder of the regulation: mining operations that do not meet § 3809.101(b)'s "interim authorization" requirements cannot initiate operations until the Bureau completes its investigation. *See, e.g.*, *Miranda v. Gonzales*, No. 08-20682-CIV, 2008 WL 11417802, at *2 (S.D. Fla. Aug. 25, 2008) ("Without APA relief, [the agency] could withhold a decision indefinitely."); *see also Saleem v. Keisler*, 520 F. Supp. 2d 1048, 1055 (W.D. Wis. 2007) ("The duty to act is no duty at all if the deadline is eternity." (quotation omitted)).

Accordingly, the Court concludes that § 3809.101 satisfies § 706(1)'s threshold requirements. *See Norton*, 542 U.S. at 64 n.1. The Court now applies the *Qwest* factors to the Bureau's delay in completing its DCV Investigation of Rocky Mountain's mining operation.

***Extent of Delay.*** The first *Qwest* factor considers the extent of an agency's delay. 398 F.3d at 1239. Glenwood Springs and Garfield County argue this factor weighs in favor of concluding the Bureau has unreasonably delayed completion of the DCV Investigation (ECF Nos. 31 at 47, 32 at 21-22). The Court agrees. Both parties allege that the Bureau has suspected for years that Rocky Mountain has been mining common variety minerals (*See, e.g.,* ECF Nos. 1 at 31 ¶ 193, 19 at 17-18 ¶ 42). The Bureau has been, by the plain terms of the Escrow Agreement, investigating Rocky Mountain's mining operations since 2019 (*See* ECF No. 32-1 at 2). And as discussed above,

the Bureau stated at oral argument that it has not, as of October 2022, completed its DCV Investigation of Rocky Mountain's mining operations. This indicates the Bureau's delay in completing the DCV Investigation has been extensive.

     ***Reasonableness of Delay in Legislative Context.*** The second *Qwest* factor considers the reasonableness of an agency's delay in the context of legislation authorizing agency action. *See* 398 F.3d at 1239. The Court agrees with Garfield County that—for the same reason the Bureau's delay has been extensive—it is unreasonable on its face (ECF No. 32 at 22). Accepting them as true, Glenwood Springs' and Garfield County's allegations make this clear (*See, e.g.,* ECF Nos. 1 at 31 ¶ 193, 19 at 17-18 ¶ 42). *See also Holt*, 46 F.3d at 1002; *Mayfield*, 826 F.3d at 1255.

     Turning to the legal basis for the Bureau's delay, Glenwood Springs correctly observes that the governing regulations compel the conclusion that judicial intervention would be appropriate (ECF No. 31 at 47-48). Section 3809.101 does not set forth a specific timeframe by which the Bureau must complete the DCV Investigation. *See* 43 C.F.R. § 3809.101(a). However, the Tenth Circuit determined in *Babbitt* that, when an agency has no "concrete deadline establishing a date by which it must act," the APA's "general admonition" that agencies act "within a reasonable time" controls. 174 F.3d at 1190 (quoting 5 U.S.C. § 555(b)). *See also Fort Sill Apache Tribe v. Nat'l Indian Gaming Comm'n*, 103 F. Supp. 3d 113, 119 (D.D.C. 2015) ("The APA imposes a general but nondiscretionary duty upon an administrative agency to pass upon a matter presented to it within a reasonable time." (quotations omitted)). Thus, when an agency is required to act under the APA "within an expeditious, prompt, or reasonable time," § 706 leaves courts with "the discretion to decide" whether a delay is unreasonable. *Id.* Application of that discretion in this case is simple. Years long delay—with no factual developments in the DCV Investigation since it

allegedly began—in completing Rocky Mountain's mineral investigation is unreasonable. *AlShamsawi v. Holder*, No. 2:10-CV-194 CW, 2011 WL 1870284, at *3 (D. Utah May 16, 2011) (applying second *Qwest* factor and concluding that an "indefinite delay . . . is not reasonable"); *but cf. Wyandotte Nation v. Salazar*, 939 F. Supp. 2d 1137, 1152 (D. Kan. 2013) (finding second *Qwest* factor weighed in agency's favor where agency "made efforts to move [an] application forward").

**Consequences of the delay**. The third *Qwest* factor considers the consequences of an agency's delay. *See* 398 F.3d at 1239. Another easily resolved issue. The Court agrees with Glenwood Springs and Garfield County that the Bureau's failure to complete the DCV Investigation has carried severe consequences for the people and land of Glenwood Springs (ECF Nos. 31 at 48, 32 at 22). The environmental and public health effects of Rocky Mountain's continued operations are, in the words of Garfield County, "dire" (ECF No. 32 at 22). Of course, the Bureau may conclude—whenever it finishes the DCV Investigation—that Rocky Mountain is not mining for any common variety purpose. But future possibilities do not excuse documented and ongoing harm. *Cf. Wyandotte Nation*, 939 F. Supp. 2d at 1152 (distinguishing case from others where consequences of delay "present[ed] harm to human health and welfare"); *see also Western Rangeland Conservation Ass'n v. Zinke*, 265 F. Supp. 3d 1267, 1289–90 (D. Utah 2017) (concluding "consequences of delay" factor favored conclusion that agency unreasonably delayed where delay involved "tangible human cost"). At this stage of litigation, based on allegations in the Complaint, the Complaint-in-Intervention, and relevant exhibits, the Court has no difficulty concluding this factor favors Glenwood Springs and Garfield County.

**Administrative Difficulty.** The fourth *Qwest* factor looks to whether an agency's resolution of the issue poses administrative difficulties. *See* 398 F.3d at 1239. Completing the DCV

Investigation of Rocky Mountain's mining operation poses none. As Glenwood Springs argues, the Bureau has had notice of Rocky Mountain's suspected mining of common variety minerals for years (ECF No. 31 at 48). And the Bureau's investigation of Rocky Mountain's mining operations carries no indicia of administrative difficulty. *Cf. Wyandotte Nation*, 939 F. Supp. 2d at 1153 (concluding agency task was administratively difficult where "the problem seem[ed] to stem from a lack of resources"). Even giving consideration to the "practical difficulty" of completing the mineral investigation, the Court agrees with Garfield County that the Bureau has acquired enough information that completing the DCV Investigation at this stage would require a nominal amount of work (ECF No. 32 at 23). *See also Western Rangeland*, 265 F. Supp. 3d at 1291 (quoting *In re Int'l Chem. Workers Union*, 958 F.2d 1144, 1149 (D.C. Cir. 1992)). Moreover, the Federal Defendants have identified nothing to indicate that expediting its mineral investigation would affect any other agency activities of a higher priority. *See id.* Given that any administrative difficulties for the Bureau's ability to complete the DCV Investigation lose persuasive force as "delay progresses, and must always be balanced against the potential for harm," the Court finds this factor favors concluding the Bureau has unreasonably delayed completing its mineral investigation. *Cutler v. Hayes*, 818 F.2d 879, 898 (D.C. Cir. 1987).

  ***Complexity of remanded action.*** The fifth *Qwest* factor looks to the complexity of the "task envisioned by a court's remand order. 398 F.3d at 1239. The task "envisioned" by the Court is simple: complete the DCV Investigation that the Bureau *began in 2019* (*See* ECF No. 32-1 at 2). Glenwood Springs notes that completion of the DCV Investigation would require data collection and analysis (ECF No. 31 at 48). Other courts have determined that evaluation of this factor requires "frank acknowledgment" that compelling agency action is "necessarily disruptive of

agency priorities and programming." *Western Rangeland*, 265 F. Supp. 3d at 1295. But, unlike the breath of the plaintiff's request to remove approximately 3,500 horses across 10 states in *Western Rangeland*, *see id.*, Glenwood Springs and Garfield County's requested relief is simple: complete an investigation that began at least three years ago into a company with whom the Bureau has held a relationship for years longer.

* * *

The Court is mindful that in many circumstances deference to agency action and decisionmaking is appropriate. Especially where, as here, the Bureau's DCV Investigation involves "technical and scientific matters" within its area of expertise. *San Juan Citizens All. v. Stiles*, 654 F.3d 1038, 1045 (10th Cir. 2011) (citation omitted). However, expertise does not immunize agencies from delays in its exercise—especially, where, as here, the Bureau has made no developments in its years long DCV Investigation into Rocky Mountain's mining operations.

For the reasons set forth above, all five *Qwest* factors favor Glenwood Springs, Garfield County, and the conclusion that the Bureau has unreasonably delayed in completing its mineral investigation. Of course, at this stage the Court is not reaching the merits of Glenwood Springs' and Garfield County's unreasonable delay claim. It simply concludes that, under either Federal Rule of Civil 12(b)(1) or 12(b)(6), the parties' claims have survived the Federal Defendants' Motion to Dismiss. Nonetheless, if the parties' claims were before the Court in a different procedural posture, its remedy would be guided by a basic principle: "There is a point when the court must let the agency know, in no uncertain terms, that enough is enough." *In re International Chemical Workers*, 958 F.2d at 1150 (quotation omitted).

### IV. CONCLUSION

Consistent with the above analysis, the Federal Defendants' Motion to Dismiss (ECF No. 30) is GRANTED in part and DENIED in part. Glenwood Springs' and Garfield County's first claims are DISMISSED. The Court DENIES the Federal Defendants' Motion to Dismiss Glenwood Springs' and Garfield County's second claims. Finally, once the Bureau's DCV Investigation is complete, the Federal Defendants shall file a status update notifying the Court of the same within 14 days of completion.

DATED this 8th day of November 2022.

BY THE COURT:

Charlotte N. Sweeney
United States District Judge