# UNITED STATES DISTRICT COURT
# DISTRICT OF COLORADO

Civil Action No. 20-cv-00658-CNS

GLENWOOD SPRINGS CITIZENS' ALLIANCE,

        Plaintiff,

GARFIELD COUNTY BOARD OF COUNTY COMMISSIONERS,

        Plaintiff-Intervenor,

vs.

UNITED STATES DEPARTMENT OF THE INTERIOR;
U.S. BUREAU OF LAND MANAGEMENT; et al.,

        Defendants.

_____

## JOINT RESPONSE IN OPPOSITION TO FEDERAL DEFENDANTS' MOTION TO DISMISS, ECF NO. 59
_____

    Plaintiff Glenwood Springs Citizens' Alliance ("GSCA") and Plaintiff-Intervenor Garfield County Board of County Commissioners ("County") respectfully submit this Joint Response in Opposition to Federal Defendants' Motion to Dismiss (ECF No. 59, June 5, 2024).

    This case is not moot because the Bureau of Land Management ("BLM") BLM says it has finally completed the long-delayed Determination of Common Variety ("DCV"). To the contrary, the DCV is only one of many discrete, mandatory actions that BLM failed to take and continues to unreasonably delay, and BLM's actions (and inactions) since completing the DCV only highlight the need for this Court's intervention.

    The DCV confirms what GSCA and the County have demonstrated: for years, Rocky Mountain Industrials ("RMI") has been mining, excavating, removing, transporting, and selling common variety limestone *without* the required Mineral Materials Sales Contract, and *without* being subject to scrutiny under BLM's non-discretionary statutory

and regulatory mandates to protect the public interest, public land, public health and safety, and the environment—including under the Federal Land Policy Management Act, the 1947 Materials Act, and the 1955 Common Varieties Act. *See* ECF No. 1 at ¶ 145 (GSCA Complaint, pleading unreasonable delay in connection with these exact same statutory and regulatory requirements); ECF No. 19 at ¶ 48 (County Complaint-in-Intervention, pleading same).

Since completing the DCV, however, BLM has engaged in none of the analyses required by these statutes and regulations, once again conflating its enforcement discretion with completing the required procedures of decisionmaking. Instead, BLM has doubled down on its delay. BLM's own documents show that BLM continues to allow RMI to remove unauthorized common variety limestone from the Quarry. In its filings before the Interior Board of Land Appeals ("IBLA"), BLM agreed to set aside its order requiring RMI to disburse the monies held in escrow for the unlawfully removed limestone, thereby allowing mining to continue unabated. Worse still, *at BLM's own request* the IBLA has now remanded the matter to the agency "to allow BLM to engage in further discussions with [RMI]"—thus calling into question not only whether the DCV is actually final and complete, but whether BLM ever intends to engage in the public interest analysis that is required by law before BLM may allow removals of common variety minerals.

As this Court stated when it denied Defendants' previous motion to dismiss, "[t]here is a point when the court must let the agency know, in no uncertain terms, that enough is enough." *Glenwood Springs Citizens' Alliance v. U.S. Dep't. of the Interior*, 639 F.Supp.3d 1168, 1185 (D. Colo. 2022) (quoting *In re Int'l Chem. Workers Union*, 958 F.2d 1144, 1150 (D.C. Cir. 1992). GSCA and the County could not agree more, and respectfully request that the Court deny Defendants' newly-filed motion to dismiss, confirm that the DCV is final and complete as represented to this Court, and proceed to

a ruling on the merits.[1]

## I.     Relevant Background

On November 8, 2022, this Court denied Defendants' previous motion to dismiss GSCA's and the County's second claims for relief, finding GSCA and the County had made judiciable claims that the agency had failed to act and unreasonably delayed taking action against RMI's unlawful mining and sale of common variety minerals. *See Glenwood Springs*, 639 F.Supp.3d at 1180-85.

On January 12, 2024, BLM issued its DCV, along with a related File Memorandum. *See generally*, DCV (attached as Exhibit 1); *see also* File Memorandum (attached as Exhibit 2).[2]  The File Memorandum memorialized the DCV's findings and confirmed BLM's understanding that RMI's plan of operation permits removal of limestone "for *uses* that require 95% or higher purity" only, and that "removal and disposal of products that contain less than 95% total carbonate should not be authorized." Ex. 2 at 1 (emphasis in original);  *see also* Ex. 1 at 44 (limestone used for asphalt shingles "is not uncommon limestone"), 45 ("RMRA has provided no information on what makes their [rock dust/pulverized limestone] special and unique."), 47 ("RMRA has provided no evidence or data that substantiates that this deposit has unique or special properties that set it apart from other deposits that are used for aggregate for the same purposes.").

On January 25, 2024, BLM issued a letter to RMI regarding the funds that were

---

[1] GSCA and the County acknowledge that should the Court deny Defendants' Motion to Dismiss, it may be necessary to supplement the briefs on the merits to conform with these new, intervening facts.  Doing so would be consistent with the determination that in cases alleging unreasonable delay, the Court is not limited to the administrative record when considering the merits.  *See Rocky Mountain Wild v. Kornze*, No. 1-13-cv-01988, 2015 WL 13873932, at *2 (D. Colo. Feb. 10, 2015); *see also* ECF No. 48 at 2; ECF No. 49 at 2 n.1.

[2] The DCV (Ex. 1) and File Memorandum (Ex. 2), were obtained from BLM by GSCA through a Freedom of Information Act ("FOIA") request.  As shown, BLM heavily redacted these documents.  GSCA has appealed these redactions to the Interior Department in Washington, D.C., but has yet to receive any response.

3

being held in escrow pending the DCV.  *See generally* January 25, 2024 BLM Letter to RMI (attached as Exhibit 3).  In that letter, BLM reiterated that "use of the minerals in [RMI's] mining claims for asphalt shingles, rock dust, aggregate, and other specialty aggregate does not meet the requirements for disposal under the Mining Law" and that "[c]onsequently, minerals used for these purposes are instead subject to disposal under the Materials Act of 1947… and the Department's regulations at 43 CFR Part 3600." Ex. 3 at 1.  Accordingly, BLM required RMI to "provide a detailing accounting" to BLM and to "direct the escrow holder to disburse the escrowed funds" in accordance with the DCV's findings.  *Id.* at 2

On June 5, 2024, BLM filed the instant Motion to Dismiss stating that the DCV is "completed," which it argues moots this case and eliminates this Court's jurisdiction.  *See* ECF No. 59 at 1, 3, 4, 6, 7, 8, 10, 11 (stating in various forms that BLM "completed the report," has finalized "the completion of the report," and that the "report is complete"). First, as set forth below, the DCV is only one of the statutory obligations at issue here and BLM's unreasonable delay as to its remaining obligations continue to constitute a cause of action as this Court recognized in its prior Order.

Moreover, BLM's Motion fails to mention that after the DCV issued, RMI filed an administrative appeal before the IBLA in order to challenge the DCV and related agency actions.  *See* RMI Notice of Appeal, Motion for Extension to File Statement of Reasons, Petition for Stay of Decision (Feb. 23, 2024) (attached as Exhibit 4).  Nor does BLM mention that before filing its notice of appeal, RMI requested—and apparently received—an "indefinite deferral period" for implementation of the DCV, during which RMI unilaterally announced it would "continue to operate according to the existing escrow agreement." February 16, 2024 Letter from RMI to BLM (attached as Exhibit 5).

In short, instead of defending and implementing the DCV's years-in-the-making conclusions, BLM acquiesced to RMI.  Even worse, in its brief before the IBLA, BLM expressly requested "that the Board set aside the January 25, 2024 letter and remand

4

this matter to the agency to allow BLM to engage in further discussion with [RMI]." BLM's Request to Set Aside and Remand at 1 (March 25, 2024) (attached as Exhibit 6). RMI of course did not oppose, and so the IBLA granted the request. *See* IBLA Order at 3 (April 5, 2024) ("[W]e grant BLM's motion, set aside BLM's January 25, 2024, letter, and remand this matter to BLM.") (attached as Exhibit 7).

Thus, despite BLM's statement that the DCV is "complete," its implementation has been stayed indefinitely, and RMI continues to mine common variety minerals (as found by the DCV) at the site. The on-the-ground conditions and activities at the site remain unchanged, and BLM's continued and unreasonable delay to meet its obligations under its mining regulations continues as if the DCV was never done. Thus, the purported "completion" of the DCV is a hollow exercise and does not excuse BLM's unreasonable delay in fulfilling its remaining statutory obligations.

## II.  GSCA and the County's Second Claims for Relief Are Not Moot

GSCA and the County's second claims for relief are not limited to mere "completion" of the DCV—a status which in any event has been called into question by BLM's own position before the IBLA and request to remand the matter to the agency "for further discussions" with RMI. Those second claims are, respectively:

> BLM's failure to act and omissions allowing RMR to continue the mining, removal, transport, and sale of common variety minerals from the Quarry without requiring a Mineral Materials Sales Contract, without subjecting such mining/removal/transport/sale to the proper applicable statutory and regulatory requirements under the FLPMA, the 1947 Materials Act, the 1955 Common Varieties Act, and their implementing regulations, and without applying the proper applicable requirements to protect the public interest, public lands, health and safety, and the environment in violation of these laws and their implementing regulations, constitutes agency action that has been unlawfully withheld and unreasonably delayed. 5 U.S.C. § 706(1).

GSCA Complaint, ECF No. 1 at 41–42 (¶ 145), and

> BLM's failures to act and omissions allowing RMR to continue the mining, removal, transport, and sale of common variety minerals from the Quarry without requiring a Mineral Materials Sales Contract, without subjecting such mining, removal, transport and /or sale to the proper applicable statutory and regulatory

> requirements under the FLPMA, the 1947 Materials Act, the 1955 Common Varieties Act, and their implementing regulations, and without applying the proper applicable requirements to protect the public interest, public lands, health and safety, and the environment in violation of these laws and their implementing regulations, constitutes agency action that has been unlawfully withheld and unreasonably delayed, within the meaning of the judicial review provisions of the APA. 5 U.S.C. §706(1).

County Complaint, ECF No. 19 at 20 (¶ 48).

When this Court examined these claims, it determined that "[a]s pleaded,… [they] allege the Bureau unreasonably delayed agency action against Rocky Mountain for its suspected mining of common variety minerals (*See* ECF Nos. 1 at 41–42 ¶ 145, 19 at 48)." *Glenwood Springs*, 639 F.Supp.3d at 1180.  After applying the relevant caselaw to the facts, the Court declined to dismiss them. *See id.* at 1180-85.  In rejecting the government's argument, this Court stated: "the Federal Defendants contend that Glenwood Springs and Garfield County do not seek to bring 'any claim' to force the Federal Defendants to take any agency actions to allow Rocky Mountain's sale of common variety minerals (ECF No. 33 at 7–8). **Nonsense**." *Id.* at 1181 (emphasis added).

In short, the second claims for relief have always sought to compel RMI to comply with its discrete and mandatory statutory and regulatory requirements under the FLPMA, the 1947 Materials Act, and the 1955 Common Varieties Act—requirements which are not limited to the DCV and which BLM continues to unreasonably delay.  Therefore, this case is not moot.

### A. <u>BLM Has Not Met its Heavy Burden To Prove Mootness</u>

Although a plaintiff has the burden to establish a court's jurisdiction, the burden is on the defendant to prove the case is moot under the "voluntary cessation exception" to mootness. *See, e.g., Prison Legal News v. Federal Bureau of Prisons*, 944 F.3d 868, 881–82 (10th Cir. 2019) (court inquiry of "'voluntary cessation exception' to mootness … is fact-specific").  As the Supreme Court recently explained: "our precedents hold, a defendant's 'voluntary cessation of a challenged practice' will moot a case only if the defendant can show that the practice cannot 'reasonably be expected to recur.'" *Federal*

*Bureau of Investigation v. Fikre*, 601 U.S. 234, 241 (2024) (quoting *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189 (2000)). "We have described this as a 'formidable burden.'" *Id.* (quoting *Friends of the Earth*, 528 U.S. at 190).

"To show that a case is truly moot, a defendant must prove 'no reasonable expectation' remains that it will 'return to [its] old ways.'" *Id.* (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 632–33 (1953)). Chief Judge Brimmer recently noted the "heavy burden" that the Defendants must meet to prove the case is moot: "Defendant must meet a 'heavy burden,' *see id.*, of showing that (1) it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur' and (2) '[i]nterim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" *Wilderness Watch v. Ferebee*, 445 F.Supp.3d 1313, 1320 (D. Colo. 2020) (quoting *Equal Employment Opportunity Commn. v. CollegeAmerica Denver, Inc.*, 869 F.3d 1171, 1173–74 (10th Cir. 2017)).

BLM has not met this "heavy burden" to show that it has "irrevocably eradicated the effects" of its continuing delay in meeting its obligations under its mining regulations. If anything, BLM has exacerbated them.

BLM's motion to dismiss ignores this Court's prior findings that the unreasonable delay claims apply to BLM's mandatory duties under the mining regulations (which are not limited to mere completion of the DCV). *See Glenwood Springs*, 639 F.Supp.3d at 1180-82. This Court already correctly determined that BLM's 43 C.F.R. § 3809.101 ("Section 101") regulations contain discrete, mandatory agency actions that apply to BLM's unreasonable delay. *Id.* at 1181-82. But Section 101 is not limited solely to the DCV requirement. Rather pursuant to Section 101, if a DCV concludes that removals are in fact of common variety minerals, BLM has the non-discretionary obligation **not** to allow those activities to continue, and to proceed only after making the follow-on determinations required by 43 C.F.R. Part 3600:

7

> If the mineral examination report… concludes that the minerals are common variety minerals, [the operator] may either relinquish [the] mining claim(s) or BLM will initiate contest proceedings.  Upon relinquishment or final departmental determinations that the mining claim(s) is null and void, [the operator] must promptly close and reclaim [its] operations unless [it is] authorized to proceed under parts 3600 and 3610 of this title.

43 CFR § 3809.101(c).

Part 3600, in turn, requires the agency to engage in environmental public interest analysis and, if appropriate, to enter into a Mineral Materials Sales Contract —the very actions that have always been at the core of GSCA's and the County's claims for unreasonable delay.  *See, e.g.*, ECF No. 1 at ¶ 145; ECF No. 19 at ¶ 48; *see also, e.g.* 43 CFR § 3601.10–11 (setting forth "[l]imitations on BLM's discretion to dispose of mineral materials" and requiring BLM to determine whether "the aggregate damage to public lands and resources would exceed the public benefits that BLM expects from the proposed disposition [of common variety minerals]"; *see also, e.g.* 43 CFR § 3602.10–15 (setting forth the process for "[a]pplying for a mineral materials sales contract").  Indeed, in its January 25, 2024 escrow letter, BLM expressly acknowledged that *if* RMI was to continue removing common variety limestone as the DCV determined, it could only do so by proceeding via "the Department's regulations at 43 CFR Part 3600."  Ex. 3 at 1.  BLM knows the processes and analyses it must take, yet continues to do nothing.

BLM's continuing and unreasonable delay puts the public in limbo and allows the ongoing harm this Court has previously recognized to continue.  *See Glenwood Springs*, 639 F.Supp.3d at 1183 ("The Court agrees with Glenwood Springs and Garfield County that the Bureau's failure to complete the DCV Investigation has carried severe consequences for the people and land of Glenwood Springs (ECF Nos. 31 at 48, 32 at 22).  The environmental and public health effects of Rocky Mountain's continued operations are, in the words of Garfield County, 'dire' (ECF No. 32 at 22).").

BLM wants it both ways.  BLM initially relied on Section 101 to allow mining to continue while it prepared the DCV.  *See, e.g.*, ECF No. 31-10 at 2 ("In accordance with

8

43 CFR 3809.101(b)(3), while the DCV is in progress and until it is determined whether the minerals are of a common or uncommon variety, the BLM may … allow operations that are currently authorized to continue, provided that you first establish an escrow account…") (March 21, 2019 letter from BLM to RMI).  But now that the DCV is completed, BLM wishes to ignore Section 101 and to further delay the non-discretionary, discrete analysis it must engage in under Part 3600 and Section 101.

Nor does engaging in this required analysis implicate BLM's enforcement discretion, as BLM argues in its motion.  *See* ECF No. 59 at 8–9.  As the Court already noted when analyzing Section 101, "[i]t is rudimentary administrative law that discretion as to the substance of the ultimate decision does not confer discretion to ignore the required procedures of decisionmaking." *Glenwood Springs*, 639 F.Supp.3d at 1182 (quoting *Bennett v. Spear*, 520 U.S. 154, 172 (1997)).  Just as BLM could not ignore the requirement to complete the DCV, BLM cannot now ignore the requirements to engage in the procedures required by Part 3600 and Section 101.

In sum, the mere "completion" of the DCV does not eliminate GSCA's and Garfield County's second claims for relief.  This is especially true as BLM apparently has no plans to: 1) apply the findings of the DCV to prevent what it now acknowledges is the illegal mining and selling of common variety minerals, or 2) engage in the required public interest analysis it must before executing a Mineral Materials Sales Contract that could continue to allow such sales.

**B. The Doctrines of Prudential Mootness and Standing Do Not Bar GSCA's and the County's Claims**

The government's argument that "the doctrine of prudential mootness would provide grounds for dismissal," BLM Motion at 10, should be rejected because it relies on the same erroneous argument that the remanded DCV is complete and final, and thus BLM is under no further obligations.  Not only is the DCV just a single discrete step among many required in the statutory scheme, but as Judge Martinez held in ruling against an

9

agency's prudential mootness motion, this doctrine does not apply if "there is insufficient evidence before the Court that the [agency action] will indeed be completed." *Colo. Envtl. Coalition v. Office of Legacy Mgmt.*, 819 F.Supp.2d 1193, 1203 (D. Colo. 2011). Put another way, even setting aside the follow-on requirements of Section 101 and Part 3600, there is insufficient evidence before the Court that the DCV is indeed "complete" given BLM's own request to remand the matter to the agency for further discussions with RMI.

Similarly, the government's standing argument relies on the same erroneous argument that BLM is under no obligation to do anything at the site. This argument should be similarly rejected considering the unequivocal language of Section 101 and Part 3600, and BLM's continued and unreasonable delay in taking the discrete agency actions and analysis described therein, all the while allowing RMI to continue its unauthorized mining of what BLM has confirmed are common variety minerals.

**II.   This Court Should Determine If the DCV Is Indeed Final and Complete**

BLM asserts that it has "completed" the DCV report, which moots this case. *See* BLM motion, ECF No. 59, at 1, 3, 4, 6, 7, 8, 10, 11 (stating in various forms that BLM "completed the report," has finalized "the completion of the report," and that the "report is complete").

But as argued in their briefings before the IBLA and referenced above, BLM also appears to take the position that the DCV is not final and is still undergoing further agency review. *See* Ex. 6 at 4 (BLM Request to IBLA). The IBLA agreed, noting that the DCV report and associated documents "do not mark the consummation of the BLM's decision-making process" and granting BLM's request for an order "setting aside the January 25, 2024 letter and remanding this matter … to allow BLM to engage in further discussions with Appellants [RMI]." Ex. 7 at 1–2.

It is unclear, however, what further "discussions" and "decision-making" regarding the DCV that BLM is referring to—especially now that it has backed away from any obligation to properly regulate the mine. As noted, a case is not moot unless there is "no

10

reasonable expectation" that the DCV could be subject to further agency review. *Fikre*, 601 U.S. at 241.  But based on the statements by BLM/DOI to the IBLA, there is certainly a reasonable potential that the DCV is indeed not final and "complete," and that it may be open to revision on remand.

Due to these inconsistent positions and statements from the BLM, GSCA and Garfield County respectfully request that this Court affirm the position BLM has taken before it.  Namely, that the DCV is indeed complete and final.  And, as shown above, such a complete and final DCV—finding that RMI is mining and selling common variety minerals without the proper approvals—supports GSCA's and the County's second claims for relief.

## CONCLUSION

BLM cannot have it both ways—arguing that it has "completed" the DCV, which based on its previous statements precludes further mining of common variety minerals, yet at the same time refusing to engage in the non-discretionary statutory analyses it must, considering the DCV's results.  The fact that BLM has backed away from the findings in the DCV and now says that it will have "further discussions" with RMI only makes matters worse and emphasizes the egregious, ongoing nature of BLM's delay.

BLM's arguments, if successful, deny GSCA, Garfield County, and the public an opportunity to be heard, and allow the agency to escape judicial review of its continuing and unreasonable delay to do anything at the site.  As noted by this Court, the "dire" and "severe consequences for the people and land of Glenwood Springs" continue unabated, due to BLM's refusal to meet its statutory and regulatory obligations. *Glenwood Springs*, 639 F.Supp.3d at 1183.

Respectfully submitted this 26th day of August, 2024.

*/s/ Roger Flynn*
Roger Flynn
Jeffrey C. Parsons

11

WESTERN MINING ACTION PROJECT
P.O. Box 349, 440 Main St., #2
Lyons, CO 80540
(303) 823-5738
wmap@igc.org

Attorneys for Plaintiff Glenwood Springs Citizens' Alliance


*/s/ Suneeta Hazra*
Suneeta Hazra
Colin O'Brien
David S. Jelsma
Arnold & Porter Kaye Scholer LLP
1144 Fifteenth Street, Suite 3100
Denver, Colorado 80202
(303) 863-1000
Suneeta.Hazra@arnoldporter.com
Colin.Obrien@arnoldporter.com
David.Jelsma@arnoldporter.com

Counsel for Plaintiff-Intervenor Garfield
County Board of County Commissioners


## List of Exhibits

1. BLM Determination of Common Varieties Report (DCV)
2. BLM File Memorandum for DCV
3. BLM January 25, 2024 Letter to RMI
4. RMI Notice of Appeal to IBLA
5. RMI February 16, 2024 Letter to BLM
6. BLM Request (to IBLA) To Set Aside and Remand
7. IBLA April 5, 2024 Dispositive Order


## Certificate of Service

I, Roger Flynn, attest that I served the foregoing to all parties by filing this with the Court's ECF filing system this 26th day of August, 2024.

*/s/ Roger Flynn*