UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

| | |
|---|---|
| GLENWOOD SPRINGS CITIZENS' ALLIANCE,<br><br>Plaintiff, and<br><br>GARFIELD COUNTY BOARD OF COUNTY COMMISSIONERS,<br><br>Plaintiff-Intervenor,<br><br>v.<br><br>THE UNITED STATES DEPARTMENT OF THE INTERIOR, *et al.*,<br><br>Defendants. | No. 1:20-cv-00658-CNS<br><br>**Defendants' Reply Brief in Support of their Motion to Dismiss [59]** |

The Bureau of Land Management ("BLM") has long permitted mining at the Mid-Continent Quarry ("the Quarry"). But it has authorized only the mining of minerals subject to disposal under the Mining Law of 1872, 30 U.S.C. §§ 22–54. Following a proposed modification to its plan of operations by the Quarry's operator ("Rocky Mountain"), BLM decided to prepare a report to determine the proper disposal authority for the minerals. ECF No. 64-1, Determination of Common Variety ("the report"). BLM also entered into an escrow agreement with Rocky Mountain whereby the latter agreed to deposit the appraised value of possible common variety minerals it mined into an escrow account while BLM prepared the report. *Id.*

Now that the report is complete, this case is moot. The Court had identified one discrete, non-discretionary duty for Defendants to complete—the report. Defendants have completed the report, and Plaintiff and Plaintiff-Intervenor ("Plaintiffs") have no

1

jurisdictional basis to litigate the discretionary enforcement decisions Defendants will make as a result of the report. For this reason, Defendants moved to dismiss for lack of jurisdiction on June 5, 2024. *See* ECF No. 59. Plaintiffs responded in opposition on August 26, 2024. *See* ECF No. 64.

1. **Plaintiffs cannot bring an action to compel discretionary enforcement under 5 U.S.C. § 706(1).**

Plaintiffs' only viable cause of action was to compel the completion of the report. To establish standing under 5 U.S.C. § 706(1), Plaintiffs must "pinpoint an agency's failure to take an action that is *both* discrete *and* mandatory." *Glenwood Springs Citizens' All. v. U.S. Dep't of the Interior*, 639 F. Supp. 3d 1168, 1180 (D. Colo. 2022) (quoting *Center for Biological Diversity v. Zinke*, 260 F. Supp. 3d 11, 21 (D.D.C. 2017) (emphasis in original)). The Court held that Plaintiffs only met that standard to press their case for a report under 43 C.F.R. § 3809.101(a), which the Court interpreted as imposing a duty on BLM to complete a "mineral examination report."[1] *Glenwood Springs Citizens' All.*, 639 F. Supp. 3d at 1182. By contrast, in considering Plaintiffs' attempts to compel BLM to take enforcement actions, the Court held that Plaintiffs "fail to identify any other authority that imposes on *the Bureau* a mandatory duty to initiate an

---

[1] As explained in Defendants' prior briefing in this case, 43 C.F.R. 3809.101 applies only to BLM's consideration of a *new* proposed plan of operations. *See* Defs.' MSJ Resp. 5-11 & n.3. It is therefore inapposite to Plaintiffs' claims, which seek to halt Rocky Mountain's operations under its existing plan of operations. Defendants do not waive this argument. However, Defendants recognize that the Court in its order on Defendants' first motion to dismiss identified in 43 C.F.R. 3809.101(a) an affirmative obligation on BLM to prepare a mineral examination report for Rocky Mountain's existing operations and brief this motion accordingly.

enforcement action against Rocky Mountain for its mining operations." *Id.* at 1179 (emphasis in original). Accordingly, "to the extent Glenwood Springs and Garfield County argue the Bureau's alleged failure to prevent or stop Rocky Mountain's continued mining of suspected common variety minerals, the parties have failed to meet their standing burden[.]" *Id.*

For this reason, the parties' merits briefing focused on whether the Court should compel Defendants to complete the report. *See* ECF No. 48, Glenwood Springs Citizens' All.'s Opening Br. on the Merits 1, 8–9, 11–13; ECF No. 49, Pl.-Intv.'s Opening Br. on the Merits 8–11. Now that the report is complete, Plaintiffs have pivoted to identify new duties, and thus presumably new potential claims. ECF No. 64, Joint Resp. in Opp. to Federal Def.'s Mot. to Dismiss ("Pls.' Resp.") 3, n.1. The duties that Plaintiffs identify, however, "do[] not breathe life into an otherwise moot case." *Brown v. Buhman*, 822 F.3d 1151, 1175 (10th Cir. 2016).

The Court has already held that only § 3809.101(a) imposes a non-discretionary duty, i.e., to complete the report, and thus only the claims seeking to compel BLM's compliance with that duty survived Defendants' motion to dismiss. *See Glenwood Springs Citizens' All.*, 639 F. Supp. 3d at 1181–82. Section 3809.101(c), by contrast, which codifies BLM's authority to "initiate contest proceedings," does not impose a mandatory duty. Section 3809.101(c) instead grants BLM the discretion to take enforcement action against a mining company.[2] Because all claims other than those

---

[2] BLM can initiate such proceedings in accordance with 43 C.F.R. Part 4, which grants the Office of Hearing and Appeals the authority to hear contest proceedings and to fully and finally determine matters for the Secretary of the Interior. *See* 43 C.F.R. § 4.451.

3

arising under § 3809.101(a) were dismissed, the operative complaints cannot plausibly include a claim under § 3809.101(c). Thus, Plaintiffs cannot avoid mootness by arguing that there is more for BLM to do under § 3809.101(c) now that BLM has completed its work under § 3809.101(a). Given the content of the report, Defendants might advance contest proceedings in the future, but Plaintiffs are not entitled to *force* those proceedings, especially when that claim is not embraced by the operative pleadings.

Plaintiffs' reliance on 43 C.F.R. Part 3600 fails for the same reason. Plaintiffs raised Part 3600 arguments in response to Defendants' first motion to dismiss, ECF No. 30, and Plaintiff-Intervenor raised the same § 3601.11 claims that Plaintiffs raise in response to the instant motion to dismiss. *See* ECF No. 31, Pl. Glenwood Springs Citizens' All.'s Resp. in Opp. to Federal Defs.' Mot. to Dismiss, 37–38; ECF No. 32, Pl.-Int. Resp. in Opp. to Defs.' Mot. to Dismiss, 17, 19. But the Court held that Plaintiffs did not articulate a discrete and mandatory duty arising from Part 3600, because the provisions they referenced all pertained to discretionary enforcement actions. *See Glenwood Springs Citizens' All.*, 639 F. Supp. 3d at 1179. Even if it were appropriate for Plaintiffs to assert new claims in their response to a motion to dismiss—and it is not—it would be futile here because Plaintiffs' brief fails to identify a discrete agency action that Defendants are required to take under 43 C.F.R. Part 3600.

To begin, Part 3600 is not applicable. Part 3600, by its terms, applies only to mining subject to the Materials Act of 1947, 30 U.S.C. §§ 601 *et seq.*, not the Mining Law of 1872 or its regulations at 43 C.F.R. Subpart 3809. *See* 43 C.F.R. § 3601.3. BLM has not exercised its discretion to dispose of mineral materials. *Id.* § 3601.10. And it has

not issued a permit or materials sales contract for non-locatable minerals to be mined from the Quarry. *See id.* § 3601.21–22. Plaintiffs single out 43 C.F.R. § 3601.11, but this regulation only states that BLM will not dispose of mineral materials if it determines "that the aggregate damage to public lands and resources would exceed the public benefits that BLM expects from the proposed disposition." *Id.* § 3601.11 The requirement that BLM stop disposing mineral materials begins only when BLM makes an aggregate damage determination, and there is no corresponding requirement that BLM make such a determination when it has authorized disposal only under the Mining Law of 1872 and Part 3809. *Id.* § 3601.21–22

In sum, the operative complaints, as modified by this Court's November 8, 2022, order, only allege claims under 43 C.F.R. § 3809.101(a). That alone is dispositive here, because Plaintiffs cannot amend their complaint by articulating new causes of action in their brief opposing the instant motion to dismiss. *See* FED. R. CIV. P. 15(a)(2). Even if it were appropriate to articulate new claims at this juncture, however, Plaintiffs' efforts would be futile because they have failed to "pinpoint" any discrete and mandatory action that BLM has delayed other than the report. *See Glenwood Springs Citizens' All.*, 639 F. Supp. 3d at 1180. Section 3809.101(c) is unavailable because it codifies BLM's discretionary enforcement authority, and section 3601.11 is unavailable because it does not specify a mandatory duty. *See* 43 C.F.R. §§ 3809.101(c), 3601.11. Section "706(1) empowers a court only to compel an agency "to perform a ministerial or non-discretionary act," or "to take action upon a matter, without directing *how* it shall act." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (emphasis in original).

5

Defendants completed the only ministerial or non-discretionary act identified by the Court and the parties, and the case is therefore moot. *See Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1109 (10th Cir. 2010).

2. **BLM has completed and defended the report.**

Plaintiffs next contend that this Court should retain jurisdiction to determine whether in fact BLM completed the Mineral Examination Report required by 43 C.F.R. § 3809.101(a). But the report at issue here, like all agency actions, is entitled to a presumption of regularity. *See Lewis v. United States*, 279 U.S. 63, 73 (1929) ("It is the settled general rule that all necessary prerequisites to the validity of official action are presumed to have been complied with, and that where the contrary is asserted it must be affirmatively shown."); *see also United States v. Chemical Found.*, 272 U.S. 1, 14-15 (1926) ("The presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties."). Plaintiffs have not offered any colorable basis—let alone clear evidence—for doubting the report's bona fides.

A determination of common variety report is an early step in BLM's process for managing the disposal of common variety minerals incident to the development of locatable minerals, and for enforcing the requirements that pertain to such disposal. As part of that broader process, on January 12, 2024, BLM completed the report in this case and prepared a decision memorandum memorializing its reasons for accepting the report. *See* ECF No. 64-7, *Rocky Mountain Industrials, Inc., et al.*, Order, IBLA 2024-115, *1 (Apr. 5, 2024) ("IBLA Order") Approximately two weeks later, BLM took the next

step in its process by issuing a letter to Rocky Mountain advising that some of the limestone removed from the subject mining claims is subject to disposal under the Materials Act of 1947. *Id.* Consistent with that determination, the letter directed Rocky Mountain to provide a detailed accounting of the sales of those minerals and to disburse the proceeds from those sales to BLM. *Id.*

After Rocky Mountain appealed the BLM letter to the Interior Board of Land Appeals ("IBLA"), BLM moved for an order from the IBLA remanding the letter and setting it aside to accommodate BLM's consideration of additional information relevant to that subsequent step in its management and enforcement process. *Id.* Contrary to Plaintiffs' contentions, however, BLM did not state in its briefing that the report itself was undergoing further agency review, and Plaintiffs' arguments to the contrary find no support in the referenced exhibit. *See* ECF No. 64-6, BLM's Request to Set Aside and Remand 3-4 ("BLM Mot."). As the referenced brief and corresponding IBLA decision make clear, BLM successfully opposed Rocky Mountain's attempt to appeal the report on grounds that the IBLA lacked jurisdiction. *See* IBLA Order 2. In this context, BLM explained that the report and accompanying memorandum were not themselves final appealable decisions because they did not themselves mark the consummation of BLM's decision process or create rights and obligations from which legal consequences would flow. BLM Mot. 4 ("Unless and until BLM takes additional action to apply the DCV Report in a final decision that affects Rocky Mountain's rights and obligations, the [IBLA] lacks jurisdiction."). But these jurisdictional arguments did not call into question the completeness of the report; they instead recognized that the report was a preliminary

7

step in BLM's management and enforcement process that does not give rise to IBLA jurisdictional standing alone.

### 3. There are no further grounds for the Court to retain jurisdiction.

The Court can dismiss this case on constitutional, prudential, or statutory grounds. Starting with constitutional mootness, the parties' disagreement over whether BLM's duty to complete the report under section 3809.101(a) was mandatory or discretionary is no longer a live controversy. The report is complete, and a ruling on the question would have no "effect in the real world." *Wyoming v. U.S. Dep't of Agr.*, 414 F.3d 1207, 1212 (10th Cir. 2005) (cleaned up).

Defendants meet their burden to persuade the Court that the challenged conduct—the delay of the report—cannot begin again. *See Rio Grande Silvery* Minnow, 601 F.3d at 1109. The Tenth Circuit has held that "in this governmental context, '[m]ost cases that deny mootness rely on *clear showings* of reluctant submission [by governmental actors] and a desire to return to the old ways.'" *Rio Grande Silvery Minnow*, 601 F.3d at 1117 (citing 13C Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3533.5, at 311 (3d ed. 2008)). And though it stopped short of formally adopting them, the Tenth Circuit has cited approvingly to out-of-circuit cases that have "expressly treated government officials' voluntary conduct with more solicitude than that of private actors." *Rio Grande Silvery Minnow*, 601 F.3d 1096, 1117 n.15 (quoting *Ragsdale v. Turnock,* 841 F.2d 1358, 1365 (7th Cir.1988)). The reason for this solicitude is that "government[al] actors in their sovereign capacity and in the exercise of their official duties are accorded a presumption of good faith because

they are public servants, not self-interested private parties." *Rio Grande Silvery Minnow*, 601 F.3d 1096, 1117 n.15 (quoting *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 325 (5th Cir. 2009), *aff'd sub nom*, 563 U.S. 277 (2011)).

But Defendants do not need any special solicitude to demonstrate that dismissal is warranted. "Corrective action by an agency can moot an issue." *Rio Grande Silvery Minnow*, 601 F.3d at 1117 (quoting *Coliseum Square Ass'n v. Jackson*, 465 F.3d 215, 246 (5th Cir.2006). It is not enough for Plaintiffs to show a "mere possibility" or a "speculative contingency" that Defendants will restart the challenged conduct. *Rio Grande Silvery Minnow*, 601 F.3d at1117. Even such a minimal showing would not be possible in this case, where Defendants have completed and released the report.

The possibility that Defendants will, at some future date, rescind or amend the report is purely hypothetical. BLM moved to remand the IBLA appeal to engage in discussions with Rocky Mountain about the funds in the escrow account, not about the DCV. *See* BLM Mot. 1–2. BLM excluded the report from its motion to remand Rocky Mountain's challenge before the IBLA. BLM Mot. 3–4, IBLA Order 2. The report is not "open to revision on remand." *See* Pls.' Resp. 11. Because there is no evidence that BLM will take any action to reverse the completion of the report, there is no Article III case or controversy remaining, and this case can be dismissed as moot.

The Court can also dismiss the case on prudential mootness or statutory grounds. Prudential mootness is especially applicable in cases where the relief sought is an injunction against the government. *See S. Utah Wilderness All. v. Smith*, 110 F.3d 724, 727 (10th Cir. 1997). It applies where a controversy is not moot in the strict

9

constitutional sense but is nevertheless "so attenuated that considerations of prudence and comity for coordinate branches of government counsel the court to stay its hand, and to withhold relief it has the power to grant." *Id.* (quoting *Chamber of Commerce v. U.S. Dep't of Energy*, 627 F.2d 289, 291 (D.C.Cir.1980)). The prudential mootness doctrine is therefore applicable here, where BLM has completed the one mandatory and discrete action identified by the Court and is now exercising its discretionary enforcement authority. Alternatively, the Court can dismiss the action on statutory grounds. Because Plaintiffs lack any remaining cause of action under the APA, they fail to carry their burden "of satisfying the APA's statutory standing requirements." *Glenwood Springs Citizens' All.*, 639 F. Supp. 3d at 1178.

## **Conclusion**

Plaintiffs sought to compel a discrete agency action, and BLM performed that action. The Court should decline their invitation to further oversee BLM's enforcement of the Mining Law of 1872. "If courts were empowered to enter general orders compelling compliance with broad statutory mandates, they would necessarily be empowered, as well, to determine whether compliance was achieved—which would mean that it would ultimately become the task of the supervising court, rather than the agency, to work out compliance with the broad statutory mandate, injecting the judge into day-to-day agency management." *S. Utah Wilderness All.*, 542 U.S. at 66–67. Because Plaintiffs no longer have a live § 706(1) claim, the Court should dismiss this action as constitutionally moot. If it determines that constitutional mootness is not the proper doctrine, it can also dismiss the case on prudential mootness or statutory standing grounds.

Respectfully submitted this 16th day of September, 2024.

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

*/s/ Erik Van de Stouwe*
ERIK VAN DE STOUWE
Trial Attorney
U.S. Department of Justice
Environment and Natural Resources Division
Natural Resources Section
P.O. Box 7611
Washington, DC 20044-7611
Tel.: (202) 305-0247
Erik.Van.de.Stouwe@usdoj.gov

*Counsel for Defendants*