

United States Department of the Interior

OFFICE OF THE SECRETARY
Washington, DC 20240

January 3, 2025

CERTIFIED MAIL: 7008 1830 0002 7513 4449
RETURN RECEIPT REQUESTED

DECISION

| | | |
|---|---|---|
| Robert Wagner | : | Determination of Common Variety |
| RMI Aggregates, Inc. | : | Escrow Agreement |
| 6200 S. Syracuse Way, Ste. 450 | : | COC-074205 |
| Greenwood Village, CO 80111 | : | |

Determination of Common Variety Report
Escrow Agreement Account Distribution

Dear Mr. Wagner:

On January 12, 2024, the Colorado River Valley Field Manager issued a Field Office Memorandum concerning the Bureau of Land Management (BLM) Determination of Common Variety (DCV) Report for the Mid-Continent Quarry, T6S, R89W, Section 4, T5S, R89W, Sections 25 and 36, T5S, R88W, Sections 30 and 31, 6th P.M, Garfield County, Colorado. The DCV Report and Field Office Memorandum inform whether and to what extent the BLM may authorize use of the surface of public lands for mining operations under 43 CFR Subpart 3809 and whether any portion of the minerals produced are mineral materials for which payment to the United States is required.

The DCV Report and Memorandum explain that where the minerals in the Mid-Continent Quarry claims meet the standard in 43 CFR 3830.12(b), the minerals are authorized for disposal under the General Mining Act of 1872 (General Mining Law). As explained in the DCV Report, that standard is met here where the limestone satisfies all American Standards for Testing and Measurement (ASTM) for Federal Aviation Administration (FAA) runways.

Conversely, use of the minerals for asphalt shingles, rock dust, aggregate, and other specialty aggregate do not meet the requirements for disposal under the General Mining Law. Consequently, minerals used for these purposes are instead subject to disposal under the Materials Act of 1947 (Materials Act) and the Department's regulations at 43 CFR Part 3600.

The BLM's March 21, 2019, letter from the Colorado River Valley Field Manager to RMR Aggregates, Inc., addressed the possibility that the DCV Report might establish that some or all of the minerals on the 44 mining claims are subject to disposal under the Materials Act. With

that in mind, as described in the BLM's 2019 letter, the BLM and RMR Aggregates (now RMI) entered into an Escrow Agreement dated September 25, 2019, to ensure that adequate funds would be available to compensate the United States, if appropriate. As a result, RMI made regular payments to the escrow account for the appraised value of possible common variety minerals, to be paid to the BLM for RMI's purchase of any materials determined to be subject to disposal under the Materials Act.

On September 3, 2024, BLM sent RMI a letter requesting confirmation by October 4, 2024, that the amount of escrowed funds attributable to the end use and sale of product meeting all ASTM standards for the construction of FAA runways is $10,851.00, plus associated interest. The letter also requested information from RMI about any other sales from the mine since September 25, 2019, that RMI believes meet the requirements for disposal under the General Mining Law. BLM and RMI met on October 1, 2024, to discuss this request and to address questions posed by RMI concerning the DCV Report and Field Office Memorandum. During that meeting, RMI confirmed that BLM correctly identified in its September 3, 2024, letter all escrowed funds attributable to the end use and sale of product meeting all ASTM standards for the construction of FAA runways. RMI has provided no additional documentation in response to the September 3, 2024, letter regarding other sales from the mine that RMI believes meet the requirements for disposal under the General Mining Law.

As required under Paragraph 7 of the Escrow Agreement (Agreement), within 30 business days of the receipt of this decision, the Department of the Interior (DOI) hereby orders RMI to direct the escrow holder to disburse the escrowed funds, accrued through November 30, 2024, as follows: 1) all escrowed funds attributable to the end use and sale of product meeting all ASTM standards for the construction of FAA runways, plus interest associated with those funds, to RMI; and 2) the remaining funds, plus interest associated with those funds, to DOI, BLM. As noted above, based on the scale tickets BLM received through November 2024, the amount of escrowed funds attributable to the end use for FAA runways is $10,851.00, plus associated interest. The amount due to DOI, BLM is all of the remaining funds in the escrow account, including interest associated with those funds.

As required under Paragraph 9 of the Agreement, if the Operator fails to direct the escrow holder to make the payments in accordance with Paragraph 7 of the Agreement, BLM will treat the Operator's removal of the minerals as unauthorized use under 43 CFR Part 3600 and the Operator may be subject to liability for damages to the United States and prosecution under applicable law, as specified in 43 CFR Subpart 9239.

This decision applies the findings in the DCV report to the materials sold during the period covered by the Agreement and ending on November 30, 2024, as well as all future sales and operations at Mid-Continent Quarry after your receipt of this decision. Future disposal of materials for non-locatable end uses will require a mineral materials contract consistent with 43 CFR 3600 regulations.

To facilitate prospective applications of the inquiry required by 43 CF.R. § 3830.12(b), RMI must provide evidence of market entry for any future proposed disposal of minerals from the Mid-Continent Quarry under the General Mining Law for alleged locatable end uses. While

RMI has provided BLM with a market study, dated May 5, 2021, the proposed markets in that report are predominantly for cement, a product that is not currently manufactured from limestone extracted at the mine. As indicated in the market study and in conversations with RMI, production of cement would likely require shipment of limestone extracted from the mine over 100 miles to reach a facility capable of manufacturing and selling cement in significant quantities in the Denver-Front Range area. To date, BLM has not received significant evidence from RMI that it has taken steps to establish market entry for cement, including securing city and county permits that may be required to access rail loadout facilities from the mine. *See* C.R.S. 24-65.1-101; *Rocky Mountain v Garfield County*, Colo. Ct. of Appeals, 21CA1208 (Feb. 2023).

DOI also has a duty to consult with relevant Tribes regarding existing and future operations at the mine. DOI takes its responsibility to consult on a government-to-government basis with Tribal Nations seriously. DOI is committed to listening to Tribal leaders as decisions are considered that affect Tribal members and interests. In this instance, consultation has presented an opportunity for the agency to carefully consider the views of the Ute Mountain Ute Tribe, the Southern Ute Indian Tribe, and the Ute Indian Tribe of the Uintah & Ouray Reservation (Tribes) concerning the existing operations of the mine. Although consultation is ongoing, the Tribes have preliminarily expressed significant concerns with the operation of the mine and its impact on Tribal cultural resources and the cultural landscape.

If you have any questions or concerns regarding this decision, please contact Doug Vilsack, BLM Colorado State Director, at (303) 239-3700, or via email at dvilsack@blm.gov.

Sincerely,

STEVEN FELDGUS
Digitally signed by STEVEN FELDGUS
Date: 2025.01.03 15:36:02 -05'00'

Steven H. Feldgus
Principal Deputy Assistant Secretary
Land and Minerals Management

cc:   Tracy Stone-Manning, BLM Director
      Robert Anderson, Solicitor, Department of the Interior
      Doug Vilsack, BLM Colorado State Director